Tyson E. Hafen (NV Bar No. 13139)
**DUANE MORRIS LLP**
100 North City Parkway, Suite 1560
Las Vegas, NV  89106
T: 702.868.2600; F:  702.385.6862
E-Mail:
        tehafen@duanemorris.com

Max H. Stern (*pro hac vice* forthcoming)
Jessica E. La Londe (*pro hac vice* forthcoming)
**DUANE MORRIS LLP**
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
T: 415.957.3000; F:  415.957.3001
E-Mail:  mhstern@duanemorris.com
        jelalonde@duanemorris.com

Attorneys for Plaintiff
*Gemini Insurance Company*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GEMINI INSURANCE COMPANY, a Delaware corporation, | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT** |
| v. | |
| INTERURBAN CONSTRUCTION, LLC, a Nevada limited liability company; URBAN LOFTS XVII, LTD., a Texas limited partnership; URBAN LOFTS TOWNHOMES dba URBAN LOFTS XIV, LTD., a Texas limited partnership; and LAS VEGAS LOFTS, INC., a Texas corporation, | |
| Defendants. | |

Plaintiff GEMINI INSURANCE COMPANY (hereinafter, "Gemini"), by and through its attorneys, Duane Morris LLP, brings this Complaint for declaratory relief and reimbursement against INTERURBAN CONSTRUCTION, LLC ("Interurban"), URBAN LOFTS XVII, LTD. ("Urban Lofts XVII"), URBAN LOFTS TOWNHOMES dba URBAN LOFTS XIV, LTD. ("Urban Lofts XIV"), and LAS VEGAS LOFTS, INC. ("Las Vegas Lofts," collectively with Interurban, Urban Lofts XVII, and Urban Lofts XIV, the "Defendants"), and states as follows:

1

**NATURE OF THE ACTION**

2

    1.    This is an action for declaratory judgment pursuant to 28 U.S.C. section 2201 and 28

3

U.S.C. section 2202 to determine the rights, duties, and obligations of the parties arising under an

4

insurance policy issued by Gemini to first named insured, Defendant Interurban.

5

    2.    Such relief is requested due to the existence of an actual controversy between the

6

parties.  Gemini contends an actual and justiciable controversy exists, and Gemini seeks a judicial

7

determination, as to its obligations to defend and indemnify Defendants in connection with various

8

underlying lawsuits in which Defendants have been sued, including: (1) *Fremont Street Loft Home*

9

*Owner's Association, et al. v. Philadelphia Indemnity Insurance Company, et al*., Case No. A-23-

10

872492-C, pending in the Eighth Judicial District Court, Clark County, Nevada ("Underlying Action

11

1") (see **Exhibit A**); (2) *Lazaro Lopez-Ruiz, et al. v. Urban Lofts Townhomes d/b/a Urban Lofts XIV,*

12

*L.P.,[1] et al*., Case No. A-25-921471-C, pending in the Eighth Judicial District Court, Clark County,

13

Nevada ("Underlying Action 2") (see **Exhibit B**); (3) *Brittany Ruiz, et al. v. Philadelphia Indemnity*

14

*Insurance Company, et al.*, Case No. A-25-921547-C, pending in the Eighth Judicial District Court,

15

Clark County, Nevada ("Underlying Action 3") (see **Exhibit C**); and (4) *Diana Silva v. Urban Lofts*

16

*XVII, Ltd., et al.*, Case No. A-24-891058-C, pending in the Eighth Judicial District Court, Clark

17

County, Nevada ("Underlying Action 4," collectively with Underlying Action 1, Underlying Action

18

2, and Underlying Action 3, the "Underlying Actions") (see **Exhibit D**), as set forth more fully below.

19

The potential liability at issue in the Underlying Actions exceeds $2,000,000.

20

    3.    If Gemini is found to have no duty to defend Defendants with respect to the Underlying

21

Actions, Gemini seeks reimbursement of the defense costs it has spent or will spend to defend

22

Defendants in connection with the Underlying Actions, which defense is in excess of $75,000.

23

    4.    Regardless of the Court's determination on the duty to defend, Gemini is entitled to

24

reimbursement of the $50,000 it spent on Defendants Interurban and Urban Lofts XVII's defense in

25

Underlying Action 1 that falls in the self-insured retention of the insurance policy.

26

27

---

[1] Note that pursuant to publicly available filings with the Texas Secretary of State, Urban Lofts XIV's proper entity name ends in "Ltd." rather than "L.P.", so it appears it was technically incorrectly named in Underlying Action 2.

28

**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT**

**THE PARTIES**

5.    Plaintiff Gemini is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Scottsdale, Arizona.

6.    Defendant Interurban is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in Houston, Texas, whose members are citizens of Texas, as discussed below.

7.    Defendant Urban Lofts XVII is a limited partnership organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas, whose partners are citizens of Texas, as discussed below.

8.    Defendant Urban Lofts XIV is a limited partnership organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas, whose partners are citizens of Texas, as discussed below.

9.    Defendant Las Vegas Lofts is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas.

**JURISDICTION**

10.    Jurisdiction is proper pursuant to 28 U.S.C. section 1332 as this is a civil action between citizens of different states where the matter in controversy exceeds $75,000, exclusive of interest and costs, and involves a justiciable controversy.

11.    Specifically, Gemini is a company organized under the laws of the State of Delaware, with its principal place of business in Scottsdale, Arizona.

12.    Defendant Interurban is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in Houston, Texas.  Each of Interurban's members are individuals who are citizens of the State of Texas.  Specifically, according to documents available to Gemini, Interurban's members are individuals Larry Davis and Sherry Davis.  Each of these individuals is a citizen of Texas, as evidenced by the Texas Secretary of State voter registration database which indicates both are registered to vote in Texas and reside at the following addresses: 4512 Montrose Boulevard, Houston, Texas (Larry Davis) and 5200 Bayard Lane, Houston, Texas 77006 (Sherry Davis).  Therefore, defendant Interurban is a citizen of Texas.

**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT**

13.     Defendant Urban Lofts XVII is a limited partnership organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas.  According to publicly available information from the Texas Secretary of State and Comptroller, Urban Lofts XVII's sole general partner is Larry S. David Interests, Inc., which, accordingly to publicly available information from the Texas Secretary of State and Comptroller, is a corporation existing under the laws of the State of Texas with a principal place of business in Houston, Texas.  Accordingly, Urban Lofts XVII's sole general partner is a citizen of the State of Texas.  Although unable to be confirmed by known publicly available information, upon information and belief, the limited partner(s) of Urban Lofts XVII is/are also citizen(s) of the state of Texas.  Therefore, defendant Urban Lofts XVII is a citizen of Texas.

14.     Defendant Urban Lofts XIV is a limited partnership organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas.  According to publicly available information from the Texas Secretary of State and Comptroller, Urban Lofts XIV's sole general partner is Defendant Las Vegas Lofts, Inc., which, accordingly to publicly available information from the Texas Secretary of State and Comptroller, is a corporation existing under the laws of the State of Texas with a principal place of business in Houston, Texas.   Accordingly, Urban Lofts XIV's sole general partner is a citizen of the State of Texas.  Although unable to be confirmed by known publicly available information, upon information and belief, the limited partner(s) of Urban Lofts XIV is/are also citizen(s) of the state of Texas.  Therefore, Urban Lofts XIV is a citizen of Texas.

15.     Defendant Las Vegas Lofts is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas, based upon publicly available information from the Texas Secretary of State.  Therefore, Las Vegas Lofts is a citizen of the State of Texas.

16.     Defendants are subject to personal jurisdiction in this judicial district because they conduct substantial business in, and have sufficient minimal contacts with, this judicial district such that the exercise of personal jurisdiction over them is fair and reasonable.  In addition, Defendants have been sued in certain of the Underlying Actions, filed in Clark County, Nevada, which is the basis for the coverage issues at issue in this action.

17.     All claims asserted in this action are so related and arise out of a common nucleus of

4

**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT**

operative facts such that they form part of the same case or controversy.

## VENUE

18.     Venue is proper pursuant to 28 U.S.C. section 1391 as Defendants operate and/or do business in this judicial district, are subject to personal jurisdiction in this judicial district, and a substantial part of the events giving rise to the claims occurred in this judicial district.

## THE INSURANCE POLICY

19.     Gemini issued a commercial general liability policy, policy number CNGP001140, with an original policy period of July 31, 2005 to July 31, 2008, to first named insured, Interurban ("Policy").

20.     A true and correct copy of the Policy is attached hereto as **Exhibit E**.  To the extent there is a discrepancy between the Policy and the allegations or quoted Policy language in this Complaint, the Policy controls.

21.     The Policy includes an endorsement, captioned AMENDMENT – EXPIRATION DATE, on form AD 66 16 01 95, which extended the policy period through August 31, 2010.

22.     Defendants Urban Lofts XVII, Urban Lofts XIV and Las Vegas Lofts are not identified as named insureds or additional insureds, nor do they otherwise qualify as insureds under the Policy, and are thus not insureds under the Policy.

23.     The Policy contains the following limits: General Aggregate Limit (other than Products-Completed Operations) of $2,000,000; Products-Completed Operations Aggregate Limit of $2,000,000; Personal and Advertising Injury Limit of $2,000,000; and Each Occurrence Limit of $2,000,000.

24.     Pursuant to a SELF INSURED RETENTION ENDORSEMENT, on form CR 0207 08 04, the Policy provides for a $50,000 self insured retention as follows:

> It is understood and agreed that such insurance as is afforded by this policy is subject to the following additional provisions:
>
> Our limit of liability (as stated in the policy) shall apply in excess of the Self Insured Retention (as stated in this endorsement) and the Self Insured Retention required under this policy cannot be insured or reinsured by any insured or be paid for by any entity other than the insured responsible for the SIR.  Our obligation under the policy to the insured applies only to the amount excess of the Self Insured Retention.
>
> Self Insured Retention: $ 50,000 each and every occurrence.

Under this endorsement, for the purposes of determining which insured shall be responsible for the Self Insured Retention, the first named insured shall have the obligation and is ultimately responsible for paying the Self Insured Retention.

The self insured retention will be reduced by any loss adjustment expense the insured pays to any third party at the company's approved rate schedule, but only for payments made for services rendered after the date of first notice to the company of the claim, demand or lawsuit.  Only those loss adjustment expenses and/or settlement payments covered under this policy apply to satisfy the Self Insured Retention.

Whenever used in this policy, "loss adjustment expense" shall mean expenses incurred after the date of first notice to the company of a claim, demand or lawsuit, including, but not limited to, investigations, experts, adjustment services, legal services at the company's approved rate schedule, court costs and such other costs.

25.    The Policy was issued with a Commercial General Liability Coverage Form numbered CG 00 01 10 01 ("CGL Form").  The Insuring Agreement in Section I of the CGL Form includes the following language:

**1.    Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the named insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretions, investigate any "occurrence" and settle any claim or "suit" that may result…

b.    This insurance applies to "bodily injury" and "property damage" only if:
   **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
   **(2)**    The "bodily injury" or "property damage" occurs during the policy period[.]

26.    The Policy contains an endorsement captioned **EXTENDED PRODUCTS – COMPLETED OPERATIONS HAZARD ENDORSEMENT,** on form CR 0197 08 04.  This endorsement replaced and modified certain language of the CGL Form's Insuring Agreement, as follows:

Insuring Agreement, Section b.(2) is deleted and replaced with the following:

2. The "bodily injury" or "property damage" occurs during the policy period. However, in respect to any coverage under the products-completed operations hazard, the "bodily injury" or "property damage" will be covered only if it occurs within the extended period of 120 months from the date of "substantial completion" of the improvement.

For the purposes of this endorsement, "substantial completion" shall be one of the following, whichever first occurs:

(1) The date of the final inspection by the applicable public agency.
(2) The date of recordation of a valid notice of completion.
(3) The date of use or occupation of the improvement.
(4) One year after termination or cessation of work on the improvement.

The "products-completed operations hazard" aggregate is for the entire term of coverage including this extension.

This endorsement does not increase the policy limits.

All other terms, conditions and exclusions of this policy remain unchanged.

27.    The phrase "products-completed operation hazard" is defined in the CGL Form of the Policy as follows:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
    (1) Products that are still in your physical possession; or
    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
        (a) When all of the work called for in your contract has been completed.
        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:
    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products completed operations are subject to the General Aggregate Limit.

28.    The Policy also contains an endorsement captioned **EXCLUSION - PROPERTY DAMAGE TO CONSTRUCTION PROJECT** on form CR 0198 08 04. This exclusion states, in

relevant part, as follows:

> This insurance does not provide coverage for or a duty to defend against any "property damage" at or to the project insured under this policy during the course of construction, up to the "substantial completion" of the project.
>
> Construction includes, but is not limited to, construction, renovation, rehabilitation, demolition, excavation or landscape. Project includes but is not limited to, buildings or structures and any supplies, material or equipment used in connection with the project.
>
> For the purposes of this endorsement, "substantial completion" shall be one of the following, whichever first occurs:
>
> 1) The date of the final inspection by the applicable public agency.
> 2) The date of recordation of a valid notice of completion.
> 3) The date of use or occupation of the improvement.
> 4) One year after termination or cessation of work on the improvement.
>
> This exclusion applies to each and every insured covered under this policy, whether developer, general contractor or subcontractor.

29.    The Policy also includes an endorsement captioned, **DESIGNATED PROJECT – LIMITATION OF COVERAGE ENDORSEMENT**, on form CR 01960804, which states, in relevant part, as follows:

> It is understood and agreed that this policy applies only to "bodily injury", "property damage", "personal injury", and" advertising injury" arising out of the project shown in the schedule below:
>
> SCHEDULE
>
> Project:
>
> 1. 11th Street Lofts
> 100 Maryland Parkway Las
> Vegas, NV
>
> 2. Fremont Street Lofts
> Fremont between Eastern and Charleston Las
> Vegas, NV

## GENERAL ALLEGATIONS

### The Project and Fire

30.    It is alleged in each of the Underlying Actions that Defendants' alleged negligence resulted in a fire that occurred on June 19, 2022, resulting in alleged damages to the underlying plaintiffs in the various Underlying Actions.

31.    By way of example, in Underlying Action 1 (and similarly alleged against the certain

**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT**

Defendants in the other Underlying Actions, as detailed below) it is alleged that Defendants Interurban and Urban Lofts XVII were hired to develop and construct a housing community, known as the Fremont Street Lofts Homes project, in Las Vegas, Nevada ("Project"), including Building 9.

32.     Underlying Action 1 further alleges that a fire occurred on June 19, 2022 ("Fire Incident") at the Project.

33.     Underlying Action 1 alleges: "Defendant URBAN LOFTS intended to complete and sell all currently planned buildings in the Plaintiff FREMONT STREET LOFT HOA Community by early 2022, including Building 9. However, as of June 19, 2022, the date of the fire discussed more fully below, Defendant URBAN LOFTS still owned and/or had not transferred possession of any part of the incompletely constructed Building 9 due to its and Defendant INTERURBAN's negligence and other misfeasance and malfeasance." (Underlying Action 1, Complaint ¶ 5.3.)

34.     Underlying Action 1 alleges: "Leading up to the June 19, 2022, fire discussed below, Defendants URBAN LOFTS' AND INTERURBAN'S construction of Building 9 stalled out for several months after completion of framing, some roofing, some flashing, and selling but not transferring ownership for some of the units. The partially constructed Building 9 had thus sat and remained a vacant wood-framed structure for many months. During that time, Building 9 sat unsecure and exposed to the elements, including wind and water." (Underlying Action 1, Complaint ¶ 5.3.1.)

35.     Underlying Action 1 alleges: "Leading up to the June 19, 2022, fire, Defendants URBAN had been unable to obtain a workaround to the fact that they designed and constructed Building 9 too close to energized power lines just opposite the south block wall boundary. The energized power lines were within just feet of Building 9. . . . ." (Underlying Action 1, Complaint para. 5.3.2.)

36.     Underlying Action 1 alleges: "Defendants URBAN LOFTS, INTERURBAN, and NV ENERGY were unable to resolve the dangerous proximity of Building 9 to the adjacent energized power lines such that construction of Building 9 could be completed. Thus, the fully wood-framed, 3-story Building 9, which was roofed including metal roof edge flashing, but otherwise largely unfinished and otherwise open to the elements including wind and water, remained dangerously in place within just feet of . . . energized directly adjacent power lines. Despite the known risk and danger

**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT**

of fire due to Building 9's perpetual unfinished construction and the structure's components' exposure to weather elements, combined with Building 9's continued unreasonably close and dangerous proximity to . . . energized power lines, Defendants URBAN failed and refused to remove Building 9 or alter its dangerous proximity to the adjacent . . . energized power lines, and [] NV ENERGY failed and refused to remove its adjacent energized power lines or alter their dangerous proximity to Building 9 and, further, failed and refused to compel Defendants URBAN to remove or alter Building 9. As a result, Building 9 remained unsafely in place and exposed directly to the adjacent energized power lines and the associated risk of a substantial fire. Thus, the negligent actions and omissions of Defendants URBAN and NV ENERGY each caused unreasonable risks of harm by fire, including property damage and personal injuries to the Plaintiff FREMONT STREET LOFT HOA Community and the other Plaintiffs herein."  (Underlying Action 1, Complaint ¶ 5.3.4.)

37.    Underlying Action 1 alleges: "On June 19, 2022, wind caused loose metal flashing from Building 9's stalled, unprotected, unfinished wood-framed structure to come into contact with . . . directly adjacent energized power lines, causing the Building 9's combustible framing material at 1995 Lewis Avenue (unit lot 23)'s roof/attic juncture to ignite and burn, consuming Building 9." (Underlying Action 1, Complaint ¶ 6.)

38.    Underlying Action 1 further alleges:

6.1.    The fire, heat, and smoke from Building 9 spread throughout the Plaintiff FREMONT STREET LOFT HOA Community, causing total loss and extensive damage to common areas, other buildings, and units of the Plaintiff FREMONT STREET LOFT HOA Community, including the buildings and units of Plaintiffs TOBLER and YAMAMOTO, as well as to buildings outside the Community's perimeter, becoming the largest structure fire in Las Vegas city limits in twenty-five years (hereinafter the "Fire").

6.2    Water from fire suppression, as well as fire-related debris, caused further damage to the Community and its buildings and units.

6.3.    Civil authorities ordered some Community buildings, along with their units, be demolished.

6.4    Plaintiffs TOBLER and YAMAMOTO, among other unit owners, were displaced from their units and have been caused to suffer the injuries and damages set forth in this Complaint, including real and personal property damage, out-of-pocket expenses, additional living expenses, and other injuries, general and special damages.

**Tender to Gemini and Provision of Defense by Gemini**

39.    Gemini first received notice of the Fire Incident on July 7, 2022 (a true and correct copy of which is attached as **Exhibit F**).  In that correspondence attorney Jeffrey Garofalo of Procopio, counsel for Defendant Interurban and non-party Urban Lofts X, Ltd., stated as follows:

> This firm represents Interurban Construction LLC and Urban Lofts X, Ltd.  We are writing to give notice that a claim has arisen with respect to the Fremont Street Loft Homes, one of the projects insured under the above-referenced policy.  On or about June 19, 2022, a fire broke out at the development.  Building 9, which was still under construction, burned to the ground and is a total loss.  Building 9 included four residences.  Additionally, an unsold home located at 1998 Lewis Avenue suffered extensive damage.  The fire spread to additional sold homes as well, causing damage ranging from minor to severe at approximately 27 other residences.
>
> Counsel for the governing homeowner's association has served our clients with a preservation letter.  We ask that you immediately respond to this claim and perform all of your obligations under the policy.

40.    The next day, on July 8, 2022, Gemini retained the law firm Wolfe & Wyman to conduct a cause and origin investigation as part of the defense of Interurban.

41.    Thereafter, Gemini also retained experts Roche Constructors and AEI Engineers to assist in this investigation.

42.    Gemini asked Defendants Interurban and Urban Lofts XVII to pay amounts incurred by Wolfe & Wyman, Roche Constructors, and AEI Engineers, because they fell within the $50,000 self-insured retention on the Policy, but Defendants Interurban and Urban Lofts XVII refused, claiming that these entities had been conducting coverage analysis and not defense.

43.    Gemini ultimately paid Wolfe & Wyman, Roche Constructors, and AEI Engineers a total of $42,901.73, under a reservation of the right to recover this amount from Defendants.

**Filing of Underlying Action 1, Tender of Defense,
and Provision of Defense by Gemini Under Reservation of Rights**

44.    Underlying Action 1 was filed on June 16, 2023.  A true and correct copy of the Complaint in Underlying Action 1 is attached as **Exhibit A**, the entirety of which is incorporated herein by reference.  As against Defendants Interurban and Urban Lofts XVII, Underlying Action 1 states Claims for Relief for Negligence, Nuisance, and Trespass.

45.    On July 12, 2023, Interurban advised Gemini that Underlying Action 1 had been filed.

46.    In an August 30, 2023, letter, Defendants Interurban and Urban Lofts XVII's counsel advised Gemini's counsel that Defendants Interurban and Urban Lofts XVII were tendering defense and indemnity of Underlying Action 1 to Gemini.

47.    On October 16, 2023, Gemini advised that it agreed to defend Defendants Interurban and Urban Lofts XVII in Underlying Action 1, pursuant to a full and complete reservation of Gemini's rights.

48.    Gemini assigned new defense counsel (the law firm Bremer Whyte) for Defendants Interurban and Urban Lofts XVII' defense.

49.    Gemini advised Defendants Interurban and Urban Lofts XVII that they would be liable for the first $50,000 incurred by Bremer Whyte pursuant to the self-insured retention on the Policy, but Defendants Interurban and Urban Lofts XVII have refused to pay Bremer Whyte's invoices.

50.    Gemini has incurred over $56,000 in defense fees paid to Bremer Whyte.

**Filing of Underlying Action 2, Tender to Gemini, and Denial by Gemini**

51.    Underlying Action 2 was filed on June 18, 2025. A true and correct copy of the Complaint in Underlying Action 2 is attached as **Exhibit B**, the entirety of which is incorporated herein by reference.

52.    The Complaint in Underlying Action 2 states Causes of Action for Negligence and Premises Liability against Defendants Urban Lofts XIV and Las Vegas Lofts.

53.    It is alleged in Underlying Action 2 that "[a]ll of the facts and circumstances that give rise to the subject lawsuit occurred on the property commonly known as URBAN LOFTS TOWNHOMES, located at 200 Tower Street, Las Vegas, NV 89101 ("the Property"). (Underlying Action 2, Complaint at 2:10-12).

54.    The entirety of the "Factual Allegations" section of the Complaint in Underlying Action 2 states as follows: "On July 19, 2022, Plaintiff LAZARO was and is the owner of his business, PERFECT AUTO BODY, PERFECT AUTO BODY was located next to Defendants' property, located at 200 Tower Street, Las Vegas NV 89101 ("the Property"). At or about the same time, Defendants owned, controlled and maintained the Property located at 200 Tower Street, Las Vegas

NV 89101. Due to their negligence, a fire broke out at the Property. The fire was so large that it spread to Plaintiff's business, damaging various of Plaintiffs' assets. As a result, Plaintiffs' assets and property sustained damage as a result of the June 19, 2022 fire." (Underlying Action 2, Complaint at 4:6-16).

55.    It is alleged in Underlying Action 2 that "Defendants had a duty to maintain the Property in such a manner to provide a safe environment for residents and neighbors. Defendants … breached their duty in that they negligently failed to design, construct, control, supervise, inspect, maintain and/or repair the Property, thereby allowing a hazardous condition which resulted in Plaintiffs' damages. Defendants' … negligence was the actual and proximate cause of the damages incurred by Plaintiffs … in an amount in excess of $15,000.00." (Underlying Action 2, Complaint at 4:21 – 5:3).

56.    It is further alleged in the Complaint in Underlying Action 2 that "Defendants had a duty to maintain the URBAN LOFTS TOWNHOMES, in a reasonably safe condition and was [sic] negligent in doing so by not providing Plaintiffs a safe a [sic] secure neighborhood. Plaintiffs' damages are of the type reasonably foreseeable as a result of the dangerous condition. Defendants … had actual or constructive notice of the dangerous condition of the Property to the time of Plaintiffs' damages. Plaintiffs' damages were caused solely and proximately by the Defendants' … negligence and without any contributory negligence on the part of the Plaintiffs. Defendants' negligence was the actual and proximate cause of damages incurred by Plaintiffs … in excess of $15,000." (Underlying Action 2, Complaint at 5:12-25).

57.    In July 2025, underlying defendants' counsel forwarded the complaint to Gemini and advised that Mr. Davis was tendering the defense and indemnity of Underlying Action 2 to Gemini.

58.    On September 25, 2025, Gemini denied coverage for Underlying Action 2 because the entities named as defendants are not insured under the Policy.

**Filing of Underlying Action 3, Tender to Gemini, and Provision of Defense by Gemini Under Reservation of Rights**

59.    Underlying Action 3 was filed on June 19, 2025. A true and correct copy of the Complaint in Underlying Action 3 is attached as **Exhibit C**, the entirety of which is incorporated

herein by reference.

60.     The Complaint in Underlying Action 3 states Causes of Action for Negligence, Nuisance, and Trespass against Defendants Urban Lofts XVII and Interurban.

61.     It is alleged in Underlying Action 3 that "[t]his matter arises out of the negligence, misfeasance, malfeasance of Defendants, resulting in a substantial fire loss and damage to Plaintiffs." (Underlying Action 3, Complaint at ¶ 2).

62.     The Complaint in Underlying Action 3 further alleges, in relevant part, as follows:

11.2.2. In concert, Defendants URBAN developed and constructed the FREMONT STREET LOFT HOA Community, including the Community's common areas, buildings, and units, including Building 9.

11.2.3. Defendant URBAN LOFTS owned, designed, and constructed the FREMONT STREET LOFT HOA Community, including the Community's common areas, buildings, and units, including Building 9. Defendant URBAN LOFTS retained, directed, and supervised Defendant INTERURBAN to assist in the development and construction of the FREMONT STREET LOFT HOA Community's common areas, buildings, and units, including Building 9. Defendants URBAN hired, directed, and supervised various contractors, subcontractors, and suppliers in the design and construction of the Community's common areas, buildings, and units ....

11.3. Defendant URBAN LOFTS intended to complete and sell all currently planned buildings in the FREMONT STREET LOFT HOA Community by early 2022, including Building 9. However, as of June 19, 2022, the date of the fire discussed more fully below, Defendant URBAN LOFTS still owned and/or had not transferred possession of any part of the incompletely constructed Building 9 due to its and Defendant INTERURBAN's negligence and other misfeasance and malfeasance.

11.3.1. Leading up to the June 19, 2022, fire discussed below, Defendants URBAN LOFTS' and INTERURBAN's construction of Building 9 stalled out for several months after completion of framing, some roofing, some flashing, and selling but not transferring ownership for some of the units. The partially constructed Building 9 had thus sat and remained a vacant wood-framed structure for many months. During that time, Building 9 sat unsecure and exposed to the elements, including wind and water.

11.3.2. Leading up to the June 19, 2022, fire, Defendants URBAN had been unable to obtain a workaround to the fact that they designed and constructed Building 9 too close to energized power lines just opposite the south block wall boundary. The energized power lines were within just feet of Building 9. . ..

11.3.3. Demonstrating the dangerously close proximity of Building 9 to the energized power lines, prior to the June 19, 2022 fire, and during construction of Building 9 by Defendants URBAN, construction elements of Building 9, including a third-story exterior wood wall frame disconnected from Building 9 and tipped over, falling into and damaging . . .adjacent energized power lines and pole behind Building 9's 1995 Lewis Avenue (unit lot 23). The leaning exterior wall remained up against the energized power lines and pole for a period of time and had to be removed by [] NV ENERGY and/or Defendants URBAN. [] NV ENERGY repaired the damaged energized power lines and pole. At least by this time, if not before, Defendants URBAN LOFTS, INTERURBAN, and NV ENERGY each had notice that Building 9 was

being constructed too close to the adjacent energized power lines and, further, had notice of the associated risks and dangers of Building 9's proximity to the energized power lines, including risk of fire to Building 9 and, as a result, to the FREMONT STREET LOFT HOA Community.

11.3.4. Defendants URBAN LOFTS, INTERURBAN, and NV ENERGY were unable to resolve the dangerous proximity of Building 9 to the adjacent energized power lines such that construction of Building 9 could be completed. Thus, the fully wood-framed, 3-story Building 9, which was roofed including metal roof edge flashing, but otherwise largely unfinished and otherwise open to the elements including wind and water, remained dangerously in place within just feet of . . . energized directly adjacent power lines. Despite the known risk and danger of fire due to Building 9's perpetual unfinished construction and the structure's components' exposure to weather elements, combined with Building 9's continued unreasonably close and dangerous proximity to . . . energized power lines, Defendants URBAN failed and refused to remove Building 9 or alter its dangerous proximity to the adjacent . . . energized power lines, and [] NV ENERGY failed and refused to remove its adjacent energized power lines or alter their dangerous proximity to Building 9 and, further, failed and refused to compel Defendants URBAN to remove or alter Building 9. As a result, Building 9 remained unsafely in place and exposed directly to the adjacent energized power lines and the associated risk of a substantial fire. Thus, the negligent actions and omissions of Defendants URBAN and NV ENERGY each caused unreasonable risks of harm by fire, including property damage and personal injuries to the FREMONT STREET LOFT HOA Community and the Plaintiffs herein.

12. On June 19, 2022, wind caused loose metal flashing from Building 9's stalled, unprotected, unfinished wood-framed structure to come into contact with . . . directly adjacent energized power lines, causing the Building 9's combustible framing material at 1995 Lewis Avenue (unit lot 23)'s roof/attic juncture to ignite and burn, consuming Building 9.

12.1. The fire, heat, and smoke from Building 9 spread throughout the FREMONT STREET LOFT HOA Community, causing total loss and extensive damage to common areas, other buildings, and units of the FREMONT STREET LOFT HOA Community, including the buildings and units of Plaintiffs BRITTANY RUIZ, MICHAEL RUIZ, BARBARA OROCIO, SUCHITRA REDDY, SEAN DUNN, DOUGLAS DUNN, ROBERT BROWN, and CHRISTIAN MOORE, as well as to buildings outside the Community's perimeter, becoming the largest structure fire in Las Vegas city limits in twenty-five years (hereinafter the "Fire").

12.2. Water from fire suppression, as well as fire-related debris, caused further damage to the Community and its buildings and units.

12.3. Civil authorities ordered some Community buildings, along with their units, be demolished.

12.4. Plaintiffs BRITTANY RUIZ, MICHAEL RUIZ, BARBARA OROCIO, SUCHITRA REDDY, SEAN DUNN, DOUGLAS DUNN, ROBERT BROWN, and CHRISTIAN MOORE, among other unit owners, were displaced from their units and have been caused to suffer the injuries and damages set forth in this Complaint, including real and personal property damage, out-of-pocket expenses, additional living expenses, and other injuries, general and special damages.

63.    In August 2025, underlying defendants' counsel forwarded the complaint to Gemini and advised that Mr. Davis was tendering the defense and indemnity of Underlying Action 3 to Gemini.

**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT**

64.    On September 2025, Gemini agreed to defend Defendants Urban Lofts XVII and Interurban in Underlying Action 3 under a complete reservation of rights.

**Filing of Underlying Action 4, Tender to Gemini, and Provision of Defense by Gemini Under Reservation of Rights**

65.    Underlying Action 4 was filed on April 12, 2024.  A true and correct copy of the Complaint in Underlying Action 4 is attached as **Exhibit D**, the entirety of which is incorporated herein by reference.

66.    The Complaint in Underlying Action 4 states Causes of Action for Negligence, Negligence Per Se, and Negligent Infliction of Emotional Distress against Defendants Urban Lofts XVII and Interurban.

67.    The entirety of the "General Allegations" section of the Complaint in Underlying Action 4 states as follows:

On or before June 19, 2022, Plaintiff DIANA SILVA, resided at 2015 Lewis Avenue, Las Vegas, Nevada.  On or about June 19, 2022, Plaintiff was at her residence, when a fire broke out at the adjacent under construction unit/building and spread to Plaintiff's unit/building. There were no alarms or warnings to alert the Plaintiff or the existence of the fire or to give her adequate notice to gather her possessions and escape.  As a direct and proximate result of the conduct of each of the Defendants, Plaintiff sustained personal injuries. Plaintiff further has and will sustain damages including, but not limited to, past and future physical pain and suffering; past and future mental, psychological, and emotional pain and suffering; past and future loss of enjoyment of life; past and future medical expenses; loss of possessions and such other damages as will be proven at the time of trial. As a direct and proximate result of the conduct of each of the Defendants, Plaintiff incurred other special damages such as, but not limited to: a loss of personal property, was displaced from her dwelling, moving and replacement expenses, etc.  As a direct and proximate result of Defendants' negligence, Plaintiff has been required to engage the services of an attorney, and have incurred, and are entitled to recover, attorney's fees and costs to bring this action.  Defendants have acted willfully and maliciously, with oppression with a reckless disregard for the grave risk imposed by its acts and omissions to the safety of the Plaintiff, or with malice, and as a result of Defendants' wrongful conduct, Plaintiff is entitled to an award of exemplary or punitive damages.

(Underlying Action 4, Complaint at ¶¶ 7-13).

68.    The Complaint in Underlying Action 4 further alleges, in relevant part, as follows:

Defendants owed Plaintiff a duty to provide a clean and safe premises and to supervise, repair, maintain, and inspect the premises, and to further eliminate and/or warn against life-threatening hazards and deficiencies on Defendants' property. Defendants further owed a duty to Plaintiff to ensure that operation, construction, repairs and or maintenance being conducted

on the same or adjacent properties created no harm of fire, smoke, or other hazards that would affect the Plaintiff's quiet enjoyment of her property. That Defendants' breach of their duty(ies) to Plaintiff created upon the premises a hazardous condition to Plaintiff. As a direct and proximate result of the hazardous condition, Plaintiff suffered serious injuries to her body and mind, some of which conditions are permanent und disabling all to their general damage in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00) …. Defendants have acted willfully and maliciously, with oppression with a reckless disregard for the grave risk imposed by its acts and omissions to the safety of the Plaintiff, or with malice, and as a result of Defendants' wrongful conduct, Plaintiff is entitled to an award of exemplary or punitive damages. …. Defendants were the owners, managers, supervisors, controllers, agents, employers and servants of the residence located at 2015 Lewis Avenue, Las Vegas, Nevada. Defendants owed a duty imposed upon them by NRS § 477.140 (et. seq.) requiring the owner of the subject premises to have one functional smoke detector in each sleeping and living room. In addition, Defendants owed a duty imposed upon them under county and city ordinances found in Clark County Code § 13.04.020 and Las Vegas Municipal Code § 16.16.10, adopting and incorporating International Fire Code (hereinafter "IFC") §§ 107 (et. seq.), … requiring the owner of the subject property to inspect and maintain the subject property and correct and abate any violations of the Fire Code, as well as maintain, inspect, test, as well as replace any defects in, fire protection systems, including, but not limited to, smoke alarms, smoke detectors and portable fire extinguishers. …. Further, …the subject premises was required to be equipped with functioning portable fire extinguishers. On or about June 19, 2022, the subject premises was in an unsafe and hazardous condition, including but not limited to, the absence of functional smoke detectors as required by Code, and a defective fire detection and prevention system. The defective condition was known to the Defendants or through reasonable inquiry and inspection should have been known to the Defendants. As residents of the unit, these Plaintiff [sic] is the persons for whom these statutes, codes and regulations were enacted to protect--hence, this Plaintiff is within the class of people for whom these codes were designed, drafted and enacted. Prior to June 19, 2022, Defendants negligently violated the codes, rules, regulations, statutes and ordinances of the State of Nevada, County of Clark, and the City of Las Vegas, which at the time of the fire on June 19, 2022, failed to warn the Plaintiff of the fire and hindered the escape from the residence by the Plaintiff. …. That, by violating Nevada and Clark County statutory law, Defendants caused Plaintiff to suffer the exact type of harm that these statutes were intended to prevent. As a direct and proximate result of the conduct of the Defendants described hereinabove, Plaintiff has sustained damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00). …. Plaintiff suffered intense emotional impact, pain and suffering, shock and distress stemming from her sensory and contemporaneous observance watching her home and all her life's possessions burning. As a direct and proximate result of the hazardous condition, Plaintiff suffered serious injuries to her body and mind, some of which conditions are permanent and disabling …. [.]

(Underlying Action 4, Complaint at ¶¶ 14-37).

69.     In August 2025, underlying defendants' counsel forwarded the complaint to Gemini and advised that Mr. Davis was tendering the defense and indemnity of Underlying Action 4 to Gemini.

70.     On September 2025, Gemini agreed to defend Defendants Urban Lofts XVII and

Interurban in Underlying Action 4 under a complete reservation of rights.

## FIRST CAUSE OF ACTION

### Declaratory Judgment - No Duty to Defend Defendants

### (Against All Defendants)

71.     Gemini realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

72.     Gemini is informed and believes that Defendants contend that Gemini has a duty to defend Defendants in the Underlying Actions.

73.     Gemini has no duty to defend Defendants in the Underlying Actions under the Policy. By way of example only, and without limitation, Gemini has no duty to defend Defendants for the reasons set forth in Paragraphs 74-76.

74.     The alleged "property damage" (from the fire that occurred on June 19, 2022) did not occur during the policy period (July 31, 2005 to August 31, 2010).

75.     In addition, the ten-year extended period under the EXTENDED PRODUCTS – COMPLETED OPERATIONS HAZARD ENDORSEMENT does not apply because this claim does not fall under the products-completed operations hazard because, at the time of the Fire Incident, construction of Building 9 was not yet completed.

76.     Alternatively, if this claim does fall under the products-completed operations hazard, Gemini is informed and believes that the ten-year extended period under the EXTENDED PRODUCTS – COMPLETED OPERATIONS HAZARD ENDORSEMENT does not apply because the "property damage" did not occur within the "extended period of 120 months from the date of 'substantial completion'" as provided for in the endorsement.

77.     As a result, an actual and justiciable controversy exists between Gemini and Defendants concerning the rights, duties, and obligations arising out of the terms, conditions, exclusions, and provisions of the Policy with respect to the duty to defend Defendants.

78.     Gemini seeks a judicial declaration that it has and had no duty to defend Defendants with respect to the Underlying Actions.

79.     No adequate remedy at law is available to Gemini.  A judicial declaration is necessary

and appropriate at this time so that Gemini and Defendants may ascertain the rights, duties, and obligations under the Policy with respect to the Underlying Actions.

**SECOND CAUSE OF ACTION**

**Declaratory Judgment - No Duty to Indemnify Defendants**

**(Against All Defendants)**

80.     Gemini realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

81.     Gemini is informed and believes that Defendants contend that Gemini has a duty to indemnify Defendants with respect to any settlement or judgment arising out of the Underlying Actions.

82.     Gemini has no duty to indemnify Defendants in the Underlying Actions under the Policy.  By way of example only, and without limitation, Gemini has no duty to indemnify Defendants for the reasons set forth in Paragraphs 83-85.

83.     The alleged "property damage" (from the fire that occurred on June 19, 2022) did not occur during the policy period (July 31, 2005 to August 31, 2010).

84.     In addition, the ten-year extended period under the EXTENDED PRODUCTS – COMPLETED OPERATIONS HAZARD ENDORSEMENT does not apply because this claim does not fall under the products-completed operations hazard because, at the time of the Fire Incident, construction of Building 9 was not yet completed.

85.     Alternatively, if this claim does fall under the products-completed operations hazard, Gemini is informed and believes that the ten-year extended period under the EXTENDED PRODUCTS – COMPLETED OPERATIONS HAZARD ENDORSEMENT does not apply because the "property damage" did not occur within the "extended period of 120 months from the date of 'substantial completion'" as provided for in the endorsement.

86.      As a result, an actual and justiciable controversy exists between Gemini and Defendants concerning the rights, duties, and obligations arising out of the terms, conditions, exclusions, and provisions of the Policy with respect to Gemini's duty to indemnify Defendants with respect to any settlement or judgment arising out of the Underlying Actions.

87.     Gemini seeks a judicial declaration that it has no duty to indemnify Defendants for any settlement or judgment arising out of the Underlying Actions.

88.     No adequate remedy at law is available to Gemini.  A judicial declaration is necessary and appropriate at this time so that Gemini and Defendants may ascertain the rights, duties, and obligations under the Policy with respect to the indemnification of Defendants regarding any settlement or judgment arising out of the Underlying Actions.

### THIRD CAUSE OF ACTION

**Declaratory Judgment - No Duty to Defend Defendants Urban Lofts XVII, Ltd., Urban Lofts XIV, Ltd., and Las Vegas Lofts, Inc.**

**(Against Defendants Urban Lofts XVII, Ltd, Urban Lofts XIV, Ltd, and Las Vegas Lofts, Inc.)**

89.     Gemini realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

90.     Gemini is informed and believes that Defendants Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts contend that Gemini has a duty to defend Defendants Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts in the Underlying Actions.

91.     Gemini has no duty to defend Defendants Urban Lofts XVII, Urban Lofts XIV, or Las Vegas Lofts in the Underlying Actions under the Policy because Defendants Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts are not insured under the Policy: these entities are not identified as named insureds on the Policy, these entities are not identified as additional insureds on the Policy, and these entities do not otherwise qualify as insureds under the Policy.

92.     As a result, an actual and justiciable controversy exists between Gemini and Defendants Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts concerning Gemini's rights, duties, and obligations under the Policy with respect to the duty to defend Defendants Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts.

93.     Gemini seeks a judicial declaration that it has and had no duty to defend Defendants Urban Lofts XVII, Urban Lofts XIV, or Las Vegas Lofts with respect to the Underlying Actions.

94.     No adequate remedy at law is available to Gemini.  A judicial determination and declaration is necessary and appropriate at this time so that Gemini and Defendants Urban Lofts XVII,

**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT**

Urban Lofts XIV, and Las Vegas Lofts may ascertain the rights, duties, and obligations under the Policy.

### FOURTH CAUSE OF ACTION

**Declaratory Judgment - No Duty to Indemnify Defendant Urban Lofts XVII, Ltd., Urban Lofts XIV, Ltd., and Las Vegas Lofts, Inc.**

**(Against Defendants Urban Lofts XVII, Ltd, Urban Lofts XIV, Ltd, and Las Vegas Lofts, Inc.)**

95.     Gemini realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

96.     Gemini is informed and believes that Defendant Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts contend that Gemini has a duty to indemnify Defendant Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts with respect to any settlement or judgment arising out of the Underlying Actions.

97.     Gemini has no duty to indemnify Defendant Urban Lofts XVII, Urban Lofts XIV, or Las Vegas Lofts in the Underlying Actions under the Policy because Defendant Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts are not insured under the Policy: these entities are not identified as named insureds on the Policy, these entities are not identified as additional insureds on the Policy, and these entities do not otherwise qualify as insureds under the Policy

98.     As a result, an actual and justiciable controversy exists between Gemini and Defendant Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts concerning Gemini's rights, duties, and obligations under the Policy with respect to Gemini's duty to indemnify Defendant Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts with respect to any settlement or judgment arising out of the Underlying Actions.

99.     Gemini seeks a judicial declaration that it has no duty to indemnify Defendant Urban Lofts XVII, Urban Lofts XIV, or Las Vegas Lofts for any settlement or judgment arising out of the Underlying Actions.

100.     No adequate remedy at law is available to Gemini.  A judicial declaration is necessary and appropriate at this time so that Gemini and Defendant Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts may ascertain the rights, duties, and obligations under the Policy with respect to the

indemnification of Defendant Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts regarding any settlement or judgment arising out of the Underlying Actions.

**FIFTH CAUSE OF ACTION**

**Reimbursement/For Money Paid For Defense**

**(Against Defendants Interurban Construction, LLC and Urban Lofts XVII, Ltd.)**

101.    Gemini realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

102.    Gemini agreed to defend Defendants Interurban and Urban Lofts XVII with respect to Underlying Actions 1, 3, and 4, subject to a complete reservation of rights, including, but not limited to, its right to deny any duty to defend or indemnify Defendants Interurban and Urban Lofts XVII, and its right to seek reimbursement of defense fees and costs from Defendants Interurban and Urban Lofts XVII.

103.    If Gemini is found to have no duty to defend Defendants Interurban and Urban Lofts XVII with respect to Underlying Actions 1, 3, and 4, Gemini is entitled to reimbursement, in whole or in part, from Defendants Interurban and Urban Lofts XVII for all amounts Gemini has spent and will spend to defend Defendants Interurban and Urban Lofts XVII with respect to Underlying Actions 1, 3, and 4.

104.    Gemini has been damaged, and will be further damaged, in an amount to be proven at trial for the fees and costs that it has paid or will pay in defending Defendants Interurban and Urban Lofts XVII with respect to Underlying Action 1, 3, and 4, which to date totals more than $75,000.

**SIXTH CAUSE OF ACTION**

**Reimbursement/For Money Paid For Amounts Spent Within Self-Insured Retention**

**(Against Defendants Interurban Construction, LLC and Urban Lofts XVII, Ltd.)**

105.    Gemini realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

106.    The Policy contains a $50,000 self-insured retention obligating the insured to pay the first $50,000 of amounts due under the Policy.

107.    Defendants Interurban and Urban Lofts XVII never paid the $50,000 self-insured

22

**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT**

retention and Gemini has incurred in excess of $50,000 for Defendants Interurban and Urban Lofts XVII's defense in Underlying Action 1.

108.    Regardless of the outcome of any of the foregoing causes of action, Gemini is entitled to reimbursement of $50,000 from Defendants Interurban and Urban Lofts XVII, for Defendants Interurban and Urban Lofts XVII's satisfaction of the self-insured retention.

109.    Gemini has been damaged in the amount of $50,000 for the amount within the self-insured retention that Gemini paid for Defendants Interurban and Urban Lofts XVII's defense in Underlying Action 1.

WHEREFORE, Plaintiff Gemini prays for judgment as follows:

As to the First Cause of Action:

    a.    For a judicial declaration that Gemini has no duty to defend Defendants in the Underlying Actions under the Policy; and

    b.    For a judicial determination of the respective rights and obligations, if any, under the Policy regarding the duty to defend Defendants.

As to the Second Cause of Action:

    a.    For a judicial declaration that Gemini has no duty to indemnify Defendants for any settlement or judgment in the Underlying Actions, in whole or in part, under the Policy; and

    b.    For a judicial determination of the respective rights and obligations, if any, under the Policy regarding the duty to indemnify Defendants for any settlement or judgment in the Underlying Actions.

As to the Third Cause of Action:

    a.    For a judicial declaration that Gemini has no duty to defend Defendant Urban Lofts XVII, Urban Lofts XIV, or Las Vegas Lofts in the Underlying Actions under the Policy; and

    b.    For a judicial determination of the respective rights and obligations, if any, under the Policy regarding the duty to defend Defendant Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts.

As to the Fourth Cause of Action:

    a.    For a judicial declaration that Gemini has no duty to indemnify Defendant Urban Lofts XVII, Urban Lofts XIV, or Las Vegas Lofts for any settlement or judgment in the Underlying Actions, in whole or in part, under the Policy; and

    b.    For a judicial determination of the respective rights and obligations, if any, under the Policy regarding the duty to indemnify Defendant Urban Lofts XVII, Urban Lofts XIV, and Las Vegas Lofts for any settlement or judgment in the Underlying Actions.

As to the Fifth Cause of Action:

    a.    For reimbursement from Defendants Interurban and Urban Lofts XVII of all or a portion of defense costs and expenses that Gemini has paid and will pay in defending Underlying Action 1.

As to the Sixth Cause of Action:

    a.    For reimbursement from Defendants Interurban and Urban Lofts XVII of the $50,000 Defendants Interurban and Urban Lofts XVII should have paid pursuant to the self-insured retention on the Policy.

As to all Causes of Action, Gemini requests its costs of suit herein, attorneys' fees, and for other relief as the Court may deem just and proper.

DATED:  January 7, 2026                  **DUANE MORRIS LLP**

                                      By: */s/ Tyson E. Hafen*
                                          Tyson E. Hafen (SBN 13139)
                                          Max H. Stern (*pro hac vice* forthcoming)
                                          Jessica E. La Londe (*pro hac vice* forthcoming)

                                        Attorneys for Plaintiff
                                        *Gemini Insurance Company*

DM1\14509111.16

**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT**